IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTONIO ALDACO-LUGO,<br>*aka Jose Antonio Aldaco,*<br><br>Defendant. | No. CR-09-01634-TUC-CKJ (CRP)<br><br>**REPORT AND RECOMMENDATION<br>ON DEFENDANT'S MOTION<br>TO SUPPRESS STATEMENTS** |

Pending before the Court is Defendant Aldaco-Lugo's Motion to Suppress Statements. (Doc 37). The Court held an evidentiary hearing on the motion on June 2, 2010. Based on the testimony presented at the evidentiary hearing the Magistrate Judge recommends the District Court DENY the motion.

**EVIDENTIARY HEARING**

The court held an evidentiary hearing on the motion to suppress statements filed by Defendant Aldaco-Lugo. (Doc 37). Defendant argues that his statements made during the questioning in the desert were made without reading him his *Miranda* rights, and that those statements were not made voluntarily, knowingly, and intelligently. The Government

contends the Defendant's questioning did not require *Mirandizing* as it was a *Terry* stop and the Border Patrol agents had reasonable suspicion to stop and question Defendant Aldaco-Lugo. At the evidentiary hearing, the Government produced the following witnesses to support its position:

1. Agent Roberto Rodriguez, Jr., U.S. Border Patrol Agent employed by the Border Patrol since 2006, and since that time assigned primarily to Tucson Patrol Station.

**FACTUAL FINDINGS**

On direct examination Agent Rodriguez testified that on July 8, 2009 he was assigned to Camp Corkscrew near Sasabe, Arizona, a mile north of the port of entry to the United States. (TR p. 21). He and his partner, U.S. Border Patrol Agent James Dominguez, were patrolling that area for illegal trafficking, drug smuggling, or terrorists. (TR p. 24). Agents were driving their standard Border Patrol green and white truck - Agent Rodriguez was driving and Agent Dominguez was sitting at the passenger seat. (TR p. 25). At approximately, 1:30 p.m. on their way to Pozo Verde Mountains, through milepost 4, State Route 286, approximately one mile west of State Route 286, Agent Dominguez spotted an individual, later identified as Defendant Aldaco-Lugo, near a blue-flagged water barrel. (TR p. 26). Agent Rodriguez testified that he stopped the vehicle and using his binoculars located the Defendant being approximately, 50-100 yards away from the agents' vehicle. (TR p. 28). Agent Dominguez pursued the Defendant on foot in the direction indicated by Agent Rodriguez. When the Defendant stopped running (TR 43), Agent Dominguez told the Defendant to come to the Border Patrol vehicle. (TR p. 28).

Agent Rodriguez testified that Agent Dominguez walked the Defendant to the Border Patrol truck. Without *Mirandizing* the Defendant, agents questioned Defendant where he was from and whether he entered the U.S. illegally. (TR p. 29). The agents also asked questions necessary to fill out the field version of the Form 826: his name, his citizenship, date and place of birth, parents' names, whether he understands or reads in Spanish, and the place of entering the border. (TR p. 31-33). Agent Rodriguez wrote down Defendant's

answers in the Border Patrol Form 826 which the defendant refused to sign. (TR p. 32). Defendant responded by providing a false name ("Jose Lopez-Lopez"), providing a false date of birth and place of birth in Mexico, stating he was a Mexican citizen and that he entered a few days earlier by crossing the border west of their present location. (TR p. 38).

On direct Agent Rodriguez testified that at the time of the apprehension both agents were wearing uniforms, having their service weapons exposed (TR p. 40), but not out (TR p. 29); they questioned the Defendant with a soft tone without any coercion (TR p. 35), and Defendant was compliant. (TR p. 43). However, on cross examination, Agent Rodriquez stated that if the Defendant wanted to walk away, they would have stopped him and not let go without answering questions as to his status. (TR p. 45).

**ANALYSIS**

Defendant argues his rights under the Fifth Amendment to the United States Constitution and *Miranda* were violated and statements he gave to the U.S. Border Patrol agents should be suppressed. The Government contends the Defendant was not in custody when he was questioned and his statements were obtained as a result of a *Terry* stop which did not require *Miranda* warnings.

*Miranda* warnings are mandatory only before custodial interrogation, when an individual has been taken into custody or otherwise deprived on his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S.436, 444 (1966). However, not all encounters between police officers and citizens involve custodial interrogation. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). "[A]n initially consensual encounter between a police officer and a citizen can be transformed into seizure or detention within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (internal citations and quotation marks omitted). Thus, a *Terry* stop, i.e. a routine stop with brief questioning is allowed without prior *Miranda* warning, provided however, that the stop and the inquiry should be reasonably related in scope to the

justification for their initiation. *Terry*, 392 U.S. at 29. The officer may question individuals as to their citizenship and immigration status, or ask to explain suspicious circumstances, but any further detention or questioning must be based on the person's consent or probable cause. *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975).

However, the Fourth Amendment prohibits "stopping and detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens." *Id.* at 884. Reasonable suspicion must be based on specific articulable facts that the persons are illegally in the country. These facts include characteristics of the area in which they encounter a person, its proximity to the border, behavior of the person, attempts to evade the officers. *Id.* at 885. In all situations the officer is entitled to assess the facts in light of his or her experience in detecting illegal entry and smuggling. *Terry* at 27.

The Court finds that Border Patrol officers had reasonable suspicion that Defendant was an illegal alien because Defendant was found alone in an area close to the U.S.-Mexican border and he tried to flee once he noticed the Border Patrol vehicle. The questions posed to the Defendant were related to the suspicion that caused Border Patrol officers to initiate the stop and questioning. In a virtually analogous case, Ninth Circuit held that based on the area of apprehension famous for being used by smugglers and the defendant's attempt to flee, the agent had reasonable suspicion that the defendant was an illegal alien. *U.S. v. Cervantes-Flores*, 421 F.3d 825, 829 (9th Cir.2005). In *Cervantes-Flores*, the agent asked questions about the defendant's citizenship, whether he had permission to be in the United States and how he had crossed into the United States. Ninth Circuit found these questions to be within the limited scope of questions to determine if Cervantes crossed the border illegally. *Id.* at 830. In the case at issue, the Border Patrol agents asked the Defendant about his name, his citizenship, date and place of birth, parents' names, whether he entered the U.S. illegally, and the place of entering the border. In view of this Court, all questions related to Defendant's citizenship, date and place of birth, parents' names, up to and including the question if he was in the U.S. illegally, were part of the *Terry* stop and did not require *Miranda* warning.

However, once the Defendant stated that he entered the United States illegally, the Border Patrol officers had a probable cause for arresting the Defendant. Therefore, all subsequent questioning constituted custodial interrogation and required *Miranda* warning. At the evidentiary hearing, the AUSA Robert Fellrath conceded that any statement made after the statement about Defendant's illegal presence in the U.S. can be suppressed. (TR p. 51-52).

Defendant further contends that the statements made by him during questioning were not voluntary, knowing, and intelligent, because the Defendant was dehydrated, weakened, and disoriented, had symptoms of a heat stroke, and his will was overborne. (TR p. 57). The Court finds there was not evidence in the record proving the alleged heat stroke of the Defendant.

There was testimony that it was hot and Defendant was not perspiring. Many lay people would recognize the absence of sweating in these circumstances as a possible symptom of a heat exhaustion or heat stroke. Nonetheless, the actual determination would require expert testimony and the evidence of other symptoms of the condition, such as delirium. No such evidence was provided. Further, no mention of heat stroke is made in Defendant's motion. The closest reference is that the confession was made "at the time of great exhaustion and confusion." (Doc. 37, motion, p. 7, ll. 29). The testimony concerning lack of perspiration (TR 44-45), unsupported by any other evidence of significant physical or mental distress, is inadequate to establish that the statements made were involuntary or unreliable.

Furthermore, presence of a medical condition that might impair judgment of the defendant does not necessarily render the statements made in such condition involuntary. Defendant must prove a coercive activity of the officers. In this case, there is no evidence of coercion exercised by Border Patrol agents. Therefore, this Court finds that the statements at issue were made voluntarily, knowingly, and intelligently.

**RECOMMENDATION**

For the reasons set out above, the Magistrate Judge recommends that the District Judge, after his independent review and analysis, DENY Defendant's Motion to Suppress Statements (Doc 37).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR-09-01634-TUC-CKJ.**

DATED this 8th day of June, 2010.

*Charles R. Pyle*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE